Filing # 170032896 E-Filed 03/30/2023 04:21:50 PM

IN THE COUNTY COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR FLAGLER COUNTY, FLORIDA
CIVIL DIVISION

RUPERT PERRY,

    *Plaintiff,*

      v.

SUNUP FINANCIAL, LLC,
TOTAL LOAN SERVICES, LLC, *and*
CAPITAL COMMUNITY BANK, INC.,

    *Defendants.*

Case Number:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Rupert Perry ("**Mr. Perry**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, SunUp Financial, LLC, doing business as Balance Credit ("**SunUp**"), Total Loan Services, LLC ("**Total**"), and Capital Community Bank, Inc. ("**CCB**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action by Mr. Perry against the Defendants for an amount greater than $8,000 and less than $50,000 against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("**FCCPA**"), the Florida *Civil Remedies for Criminal Practices Act*, § 772.101, Fla. Stat., *et seq.* ("**CRCPA**"), and for Unjust Enrichment.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under 18 U.S.C. § 1965, § 772.104, Fla. Stat., § 559.77(1), Fla. Stat., and § 34.01, Fla. Stat.

3. The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4. Pursuant to § 47.051, Fla. Stat., venue is proper in Flagler County, Florida because the acts complained of were committed and/ or caused by the Defendants within Flagler County, Florida.

## PARTIES

### Mr. Perry

5. **Mr. Perry** is a natural person residing in the City of Palm Coast, Flagler County, Florida.

6. Mr. Perry is a *Consumer* as defined by the FCCPA, § 559.55(8), Fla. Stat.

### SunUp

7. **SunUp** is a Delaware limited liability company with a principal business address of 33 N LaSalle St., Suite 800, Chicago, IL 60602.

8. SunUp's Florida registered agent is **CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324**.

### Total

9. **Total** is an Ohio limited liability company with a principal business address of 205 Sugar Camp Circle, Dayton, OH 45409.

10. Total's Ohio registered agent is **CH&K Agent Service, Inc., 1 South Main St., Suite 1300, Dayton, OH 45402**.

## CCB

11.     **CCB** is a Utah corporation with a principal business address of 3280 N. University Ave., Provo, UT 84604.

12.     CCB's Utah registered agent is **Matthew Field, 3280 N. University Ave., Provo, UT 84604**.

## FACTUAL ALLEGATIONS

13.     On or about May 4, 2021, Mr. Perry obtained a *Balance Credit* loan from the Defendants in the amount of $1,104.20 (the "**Loan**"). **SEE PLAINTIFF'S EXHIBIT A.**

14.     The annual simple interest rate on the Loan was over 220%. *Id.*

15.     Mr. Perry was required to repay $3,756.02 for the $1,104.20 Loan. *Id.*

16.     In fact, Mr. Perry did repay the Loan in full by June 15, 2022. *Id.*

17.     In Florida, extensions of credit issued by SunUp are purportedly made through CCB, a small bank located in Provo, Utah.

18.     However, as explained in more detail below, CCB had virtually no involvement in the underwriting or approval of Mr. Perry's Loan.

19.     Likewise, CCB had no involvement in the billing, collection, or servicing of the Loan.

20.     CCB did, however, knowingly participate in the scheme outlined below and profited from it.

21.     The money used to fund the Loan SunUp made to Mr. Perry overwhelmingly belonged to SunUp, its subsidiaries, and/or its investors, and not to CCB.

22.     SunUp and its related non-bank parent companies and subsidiaries were the entities which provided notices to Mr. Perry, such as agreements and billing statements.

23.    SunUp holds all the documents pertaining to Mr. Perry's Loan.

24.    SunUp, along with Total, either directly or through its contractors, performs virtually all of the activities related to Balance Credit's lending business – including collection, servicing, payment, and remittance operations.

25.    Mr. Perry used the proceeds from the Loan to make personal and household purchases.

26.    Therefore, the alleged balance due on the Loan meets the definition of *Debt* under the FCCPA, § 559.55(6), Fla. Stat.

27.    § 687.02(1), Fla. Stat. renders extensions of credit made at interest rates greater than 18% per year usurious.

28.    § 687.071(3), Fla. Stat. renders an extension of credit made at an annual interest rate greater than 45% a third-degree felony.

29.    § 687.071(7), Fla. Stat. renders an extension of credit with an annual interest rate exceeding 25%, and logically any debt stemming from such extension of credit, void and unenforceable.

30.    Any person who willfully makes extensions of credit with annual interest rates exceeding 25% forfeits the right to collect payment for the extensions of credit because such extensions of credit are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

31.    Under Florida law, even the recovery of the principal balance on extensions of credit made with annual interest rates exceeding 25% is impermissible. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

32.    The purpose of Florida's usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*,190 So.2d 415 (Fla. 2d DCA 1966).

33.    Because the Loan is subject to an annual interest rate that exceeds even the 45% limit as proscribed in § 687.071(3), Fla. Stat., the balance is void *ab initio* and unenforceable pursuant to § 687.071(7), Fla. Stat.

34.    The balance on the Loan is therefore an *Unlawful Debt* per § 772.102(2)(a)(3), Fla. Stat. and 18 U.S.C. § 1961(6).

35.    Any amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

## SunUp Engages in Rent-a-Bank Scheme with CCB

36.    Balance Credit is owned by SunUp, which is a subsidiary of Braviant Holdings ("**Braviant**"), a Chicago-based "FinTech" firm which has attracted close to $100 million of investment.

37.    Braviant is also a Managing Member of SunUp Financial, LLC.

38.    The CEO of Braviant Holdings is Matt Martorello ("**Martorello**"), a businessman with a history involving several predatory lending schemes.

39.    Perhaps most dubious among these lending schemes was Martorello's use of a small Native American tribe in Michigan to act as the straw owner of an online lender called Big Picture Loans, which made online payday loans at interest rates typically exceeding 700% annually.

40.    The use of a native American tribe to front for usurious loan operations is commonly known as a rent-a-tribe scheme.  Tribes are used because they can claim sovereign immunity from most civil litigation.

41.    Martorello, through a maze of shell companies and subsidiaries, essentially controlled the "tribal" lending business ostensibly owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "**Tribe**").

42.    The Tribe would receive roughly two cents on the dollar of revenue, with Martorello-controlled entities receiving the remainder.

43.    The $0.02 on the dollar was the "rent" of the "rent-a-tribe" scheme; beyond this, the Tribe had virtually no involvement in the underwriting, collection, funding, or management of Big Picture Loans. *See Williams v. Big Picture Loans, LLC*, Civil Action No. 3:17-cv-461 (E.D. Va. Jul. 12, 2021). In December 2020, a court approved an $8.7 million class action settlement which returned unlawfully-charged interest to consumers.

44.    In the instant case, Martorello engineered a "rent-a-***bank***" scheme.

45.    In place of the Tribe, Martorello substituted CCB, a single-branch bank located in Provo, Utah.

46.    SunUp, doing business as Balance Credit, makes loans at interest rates between 100% and 700% annually – rates which constitute criminal usury in many states, including Florida.

47.    In states which allow SunUp to charge triple-digit interest rates, SunUp makes loans in its own name.

48.    However, in states which prohibit loansharking, including Florida, SunUp claims to "partner" with CCB.

49.    Purportedly, CCB originates the loan.

50.     However, CCB then immediately assigns the loan to Braviant, which then re-assigns it to SunUp.

51.     Braviant and SunUp then "service" the loan in all ways.

52.     At no point is CCB the true lender of the Balance Credit loans nor is any capital belonging to CCB at risk.

53.     "Rent-a-bank" schemes simply use a legal smoke screen so that predatory lenders like Braviant and SunUp can at least attempt to make loans to consumers in states which prohibit usury, including Florida, minimizing the danger of prosecution or the inability to collect interest by intercession of the National Bank Act, 12 U.S.C. § 85, as explained *infra*.

54.     CCB rents its name and status as a state-chartered bank to SunUp, a non-bank entity.

55.     Other than lending its name, CCB has virtually nothing to do with the loans and lines of credit that SunUp creates.

56.     At no point was CCB the true lender of Mr. Perry's Loan.

57.     CCB's capital was not at risk for the Loan.

58.     SunUp simply engaged in a "rent-a-bank" scheme, just as Martorello had engaged in a "rent-a-tribe" scheme a decade earlier.

59.     Pursuant to the National Bank Act, 12 U.S.C. § 85, a chartered bank can make loans in other states at interest rate limits imposed by its home state.

60.     CCB is a chartered bank that can make loans at interest rates up to the maximum allowed by its home state of Utah.

61. Conveniently, Utah does not have a specifically defined interest rate limit for private parties.[1]

62. Thus, by CCB claiming to be the *True Lender* of Mr. Perry's Loan, Balance Credit asserts its loans are exempt from Florida's criminal and civil statutes prohibiting usury.

63. Nonetheless, CCB is not the true lender of Mr. Perry's Loan.

64. CCB simply receives a guaranteed fee which is, upon information and belief, roughly 5% of the original amount of the loan, in exchange for renting its name and status as an FDIC-insured bank to SunUp.

65. CCB is paid the guaranteed fee irrespective of whether the consumer ever repays the loan.

66. SunUp also indemnifies CCB against any losses.

67. In a series of transactions utilizing several different limited liability companies, money "loaned" by CCB is immediately repaid to it by SunUp and its affiliates.

68. SunUp and its affiliates then acquire "servicing" rights for the loan and collect usurious interest and fees from consumers.

69. SunUp maintains a cash collateral account with CCB, an alternative collateral account, and letters of credit that benefit CCB.

70. This provides three extra layers of protection for CCB, at the expense of SunUp, to ensure that CCB loses no money even if a loan the bank "made" does not perform.

71. Notably, consumers who are looking to obtain financing from SunUp must apply at www.BalanceCredit.com and not through CCB's own website.

---

[1] Instead, Utah Statutes simply prohibit unconscionable consumer lending, rendering such loans void. *See* UCA § 70C-7-106; *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996).

72. SunUp, not CCB, has the predominant economic interest in loans made to consumers like Mr. Perry, and thus, SunUp is the true lender of Mr. Perry's Loan. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC,* No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); *see also, e.g., State Bank v. Strong,* 651 F.3d 1241 (11th Cir. 2011); *Easter v. Am. W. Fin.,* 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.,* No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt,* 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey,* No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.,* 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.,* No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

73. Total acts as a collection agent and servicer for SunUp, and collects interest payments, and provides support and other services to the group enterprise.

74. Tradeline data reported to *Clarity Services, Inc.* ("**Clarity**"), a major credit reporting agency ("**CRA**"), includes Total's name "TLS", standing for Total Lending Services. **SEE PLAINTIFF'S EXHIBIT B.**

75. By reporting Mr. Perry's Loan to CRAs, the Defendants engaged in the collection of the Loan from Mr. Perry. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

76. CCB engages in similar "rent-a-bank" schemes with many other FinTech entities, including LoanMe LLC, an online lender which makes loans at over 200% annual interest and was

founded by John Paul Reddam; Reddam also founded CashCall which operated on a "rent-a-tribe" model and has been sued by the United States government as well as at least 10 different state attorneys general.

77.     RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

78.     In *Boyle v. United States*, the Supreme Court recognized that RICO's definition of enterprise was "obviously broad" and included an "association in fact" enterprise. 556 U.S. 938, 944 (2009).

79.     Thus, an enterprise may be a legally recognized entity like a corporation or an "association in fact enterprise," *i.e.*, "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Boyle*, 556 U.S. at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.").

80.     Here, Defendants are an ***association in fact enterprise*** who are associated together for the common purpose of making, collecting, and profiting off illegal loans.

81.     Therefore, Defendants meet the definition of *Enterprise* pursuant to 18 U.S.C. § 1961(4), and § 772.102(3), Fla. Stat.

82.     The Loan carried an interest exceeding the maximum rate allowed by Florida law.

83.     The Loan is thus an *Unlawful Debt* under RICO, 18 U.S.C. § 1961(6).

84.     The Loan was made to a Florida resident, in Florida, and charged an interest rate in excess of 25% per annum – in violation of § 687.071(2), Fla. Stat.

85.     The Loan was thus an unlawful debt per § 772.102(2)(a)(3), Fla. Stat.

86.     Mr. Perry has suffered severe emotional distress as a result of the Defendants' attempts to collect an unenforceable debt.

87.     Mr. Perry has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

**COUNT I**
**VIOLATIONS OF RICO, 18 U.S.C § 1962(a)**

88.     Mr. Perry incorporates paragraphs 1 – 87 as if fully stated herein.

89.     The Defendants each received proceeds, directly or indirectly, from the collection of the Loan.

90.     The Defendants each used or invested, directly or indirectly, a portion of the income derived from the collection of the Loan to acquire or further establish or operate the enterprise.

91.     The Defendants criminal intent is evinced by the use of the "rent-a-bank" scheme to avoid state usury laws in states where such laws exist.

92.     Therefore, the Defendants violated 18 U.S.C § 1962(a).

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.     Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02);

b.     Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.     Any other relief this Court deems equitable and proper under the circumstances.

**COUNT II**
**VIOLATIONS OF RICO, 18 U.S.C § 1962(b)**

93.     Mr. Perry incorporates paragraphs 1 – 87 as if fully stated herein.

Page **11** of **24**

94.     The Defendants each received proceeds, directly or indirectly, from the collection of the Loan.

95.     The Defendants each utilized a portion of the income derived from the collection of the Loan to acquire or maintain, directly or indirectly, interest or control in an enterprise.

96.     Therefore, the Defendants violated 18 U.S.C § 1962(b).

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.      Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02);

b.      Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.      Any other relief this Court deems equitable and proper under the circumstances

## COUNT III
## VIOLATIONS OF RICO – 18 U.S.C § 1962(c)

97.     Mr. Perry incorporates Paragraphs 1 – 87 as if fully restated herein.

98.     The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of an unlawful debt.

99.     The Defendants' participation in the enterprise caused Mr. Perry to repay amounts on the Loan.

100.    The Defendants utilized the internet, telephone, and/or mail to reach across state lines in the operation of the BalanceCredit.com platform, through:

a.      collection correspondence;

b.      credit reporting;

c.      electronic mail;

d.      a deposit to Mr. Perry's Florida bank account; and,

e.       withdrawals from Mr. Perry's Florida bank account.

101.    Therefore, the Defendants violated 18 U.S.C § 1962(c).

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.      Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02);

b.      Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.      Any other relief this Court deems equitable and proper under the circumstances.

<u>**COUNT IV**</u>
<u>**VIOLATIONS OF RICO – 18 U.S.C § 1962(d)**</u>

102.    Mr. Perry incorporates Paragraphs 1 – 101 as if fully restated herein.

103.    The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other persons, to issue and collect unlawful debts through the BalanceCredit.com lending platform, including the Loan.

104.    The Defendants each acted in furtherance of this conspiracy when, at various times, they did the following:

a.      issued the Loan to Mr. Perry;

b.      initiated a deposit to Mr. Perry's bank account;

c.      initiated withdrawals from Mr. Perry's bank account;

d.      attempted collection of the credit lines through correspondence to Mr. Perry; and/or,

e.      claimed CCB ownership of the Loan to provide a guise of bank issuance.

105.    The Defendants also each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through BalanceCredit.com.

106.    The Defendants utilized the internet, telephone, and/or mail to reach across state lines in furtherance of their conspiracy.

107.    Therefore, the Defendants violated 18 U.S.C § 1962(d).

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.    Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02);

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

a.    Any other relief this Court deems equitable and proper under the circumstances.

## COUNT V
## VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

108.    Mr. Perry incorporates Paragraphs 1 – 87 as if fully restated herein.

109.    The Loan is unenforceable in Florida, as it was made to a Florida resident, in Florida, and carried an interest rate exceeding 45% in violation of § 687.071(3), Fla. Stat.

110.    The Defendants knew the annual interest on the Loans made to Mr. Perry exceeded 45% in violation of § 687.071(3), Fla. Stat.

111.    The Defendants' knowledge of the illegal nature of the loan is evinced by the great lengths to which they have gone in an attempt to avoid Florida law by use of a "rent-a-bank" scheme.

112.    The Defendants attempted, claimed, or threatened to enforce the unlawful Loan and/or asserted the legal right to enforce the unlawful Loan when they:

a.    attempted collection of the Loan via correspondence to Mr. Perry;

b.    attempted collection of the Loan via credit reporting; and,

c. initiated ACH debits from Mr. Perry's checking account in an attempt to obtain payment.

113. The Defendants' collection and attempted collection falsely asserted that the Loan was legitimately owed, when it was not.

114. The Defendants' collection and attempted collection falsely asserted that they had a legal right to collect the Loan, which they did not.

115. The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Mr. Perry and profiting from such collection.

116. Therefore, Defendants violated § 559.72(9), Fla. Stat.

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

b. Actual damages of at least **$3,756.02** pursuant to § 559.77(2), Fla. Stat.;

c. Injunctive relief preventing the Defendants from attempting to collect the alleged balance from Mr. Perry pursuant to § 559.77(2), Fla. Stat.;

d. Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

e. Such other relief that this Court deems just and proper.

## COUNT VI
## VIOLATIONS OF THE CRCPA – § 772.103(1), FLA. STAT.

117. Mr. Perry incorporates Paragraphs 1 – 87 as if fully restated herein.

118. The Defendants received proceeds directly or indirectly from the collection of the Loan.

119. The Defendants used or invested, directly or indirectly, a portion of the income derived from the collection of the Loan to acquire interest in real property or operate or establish an enterprise.

120. Therefore, Defendants violated § 772.103(1), Fla. Stat.

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a. Threefold the amount of actual damages, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b. Reasonable costs and attorneys' fees pursuant to pursuant to § 772.104(1), Fla. Stat.; and,

c. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VII
## VIOLATIONS OF THE CRCPA – § 772.103(2), FLA. STAT.

121. Mr. Perry incorporates Paragraphs 1 – 87 as if fully restated herein.

122. The Defendants received proceeds directly or indirectly from the collection of the Loan.

123. The Defendants utilized a portion of the income derived from the collection of the Loan to acquire or maintain, directly or indirectly, interest in or control of an enterprise or real property.

124. Therefore, Defendants violated § 772.103(2), Fla. Stat.

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.  Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02), or the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.  Reasonable costs and attorneys' fees pursuant to pursuant to § 772.104(1), Fla. Stat.; and,

c.  Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VIII
## VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.

125.  Mr. Perry incorporates Paragraphs 1 – 87 as if fully restated herein.

126.  The Defendants each associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, for the purpose of the collection of unlawful debts.

127.  The Defendants' participation in the enterprise caused Mr. Perry to repay amounts on the Loan.

128.  The Defendants received proceeds directly and indirectly from the collection of the Loan.

129.  The Defendants associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, to collect on the Loan.

130.  Therefore, Defendants violated § 772.103(3), Fla. Stat.

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.  Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02), or the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

Page 17 of 24

b.     Reasonable costs and attorneys' fees pursuant to pursuant to § 772.104(1), Fla. Stat.; and,

c.     Any other relief this Court deems equitable and proper under the circumstances.

## COUNT IX
## VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

131.   Mr. Perry incorporates Paragraphs 1 – 87 and 117 – 130 as if fully restated herein.

132.   The Defendants conspired with each other, or other persons, to issue and collect unlawful debts, including the Loan.

133.   The Defendants each acted in furtherance of this conspiracy when, at various times, they:

a.     issued the Loan to Mr. Perry;

b.     initiated a deposit to Mr. Perry's bank account;

c.     initiated withdrawals from Mr. Perry's bank account;

d.     attempted collection of the Loan through correspondence to Mr. Perry; and/or,

e.     claimed CCB ownership of the Loan to provide a guise of issuance from a bank.

134.   As evidenced by their cooperation with one another, the Defendants each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans.

135.   Therefore, Defendants violated § 772.103(3), Fla. Stat.

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.     Threefold the amount of actual damages equal to **$11,268.05** (3x$3,756.02), or the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.     Reasonable costs and attorneys' fees pursuant to pursuant to § 772.104(1), Fla. Stat.; and,

c.     Any other relief this Court deems equitable and proper under the circumstances.

**COUNT X**
**UNJUST ENRICHMENT**

136.    Mr. Perry incorporates Paragraphs 1 – 87 as if fully restated herein.

137.    Mr. Perry conferred a benefit to the Defendants in the form of payments on the Loan.

138.    The Defendants had no legal right to the collection of these payments and were therefore unjustly enriched.

139.    The Defendants knew that they had no legal right to the collection of the payments, as evidenced by their business model which sought to shield them from Florida's laws, but chose to accept the funds from Mr. Perry regardless.

**WHEREFORE,** Mr. Perry respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.     Actual damages for the payments conferred to the Defendants equal to **$3,756.02** pursuant to the void extension of credit; and,

a.     Any other relief this Court deems equitable and proper under the circumstances.

Page **19** of **24**

## **DEMAND FOR JURY TRIAL**

Mr. Perry hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 30, 2023, by:

**SERAPH LEGAL, P. A.**

*/s/ Carolyne Moomaw*
Carolyne Moomaw, Esq.
Florida Bar No.: 21889
CMoomaw@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff,*
*Rupert Perry*

**ATTACHED EXHIBIT LIST**

A       Balance Credit Loan Agreement, May 4, 2021 - Excerpt
B       Mr. Perry's Clarity Statement, February 11, 2023, Balance Credit Loan Tradeline -
        Excerpt

# EXHIBIT A
## Balance Credit Loan Agreement, May 4, 2021 - Excerpt

THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"

FEDERAL TRUTH-IN-LENDING DISCLOSURES AND PROMISSORY NOTE

App #  ▮▮▮▮▮▮                                                      Date:   05/04/2021

Borrower:                                                          Lender:
Rupert Perry                                                       CC Connect, a division of
                                                                   Capital Community Bank
PALM COAST, FL 32137                                               3280 N. University Avenue
                                                                   Provo, UT 84604
                                                                   (855)-942-2526

In the following Federal Truth-In-Lending Disclosures and Promissory Note (the "Note", "Loan" or "Agreement"), "Borrower," "I," "me," and "my" refer to the Borrower who has signed this Note. "Lender," "you," and "your" refer to CC Connect, a division of Capital Community Bank. Capital Community Bank is an FDIC-insured Utah state-chartered bank.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE  The cost of my credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost me. | AMOUNT FINANCED  The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS  The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 224.01% | $2,651.82 | $1,104.20 | $3,756.02 |

Payment Schedule:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $104.33 | 05/15/2021 |
| 2 | $104.33 | 05/31/2021 |
| 3 | $104.33 | 06/15/2021 |
| 4 | $104.33 | 06/30/2021 |
| 5 | $104.33 | 07/15/2021 |
| 6 | $104.33 | 07/31/2021 |
| 7 | $104.33 | 08/15/2021 |
| 8 | $104.33 | 08/31/2021 |
| 9 | $104.33 | 09/15/2021 |
| 10 | $104.33 | 09/30/2021 |
| 11 | $104.33 | 10/15/2021 |
| 12 | $104.33 | 10/31/2021 |
| 13 | $104.33 | 11/15/2021 |
| 14 | $104.33 | 11/30/2021 |
| 15 | $104.33 | 12/15/2021 |
| 16 | $104.33 | 12/31/2021 |
| 17 | $104.33 | 01/15/2022 |
| 18 | $104.33 | 01/31/2022 |
| 19 | $104.33 | 02/15/2022 |
| 20 | $104.33 | 02/28/2022 |

Page 1 of 11

# EXHIBIT B
## Mr. Perry's Clarity Statement, February 11, 2023
## Balance Credit Loan Tradeline - Excerpt

## Clarity Report for PERRY, RUPERT

**2/11/2023**

### Consumer

Name
PERRY, RUPERT

Address
██████████
PALM COAST, FL 32137

Reference Number
████████

### Notices

Enclosed is a copy of your Clarity Credit Report and/or Clarity Credit Score, a "Summary of Your Rights Under the Fair Credit Reporting Act", and any applicable state rights for you. Below you can find links to help you read and understand this document.

If you wish to dispute information contained in your report, please call us to explain your dispute. You may also provide additional documentation to support your dispute, but it is not required. If you requested your Clarity Credit Report, but not your Clarity Credit Score, you may request and obtain a Clarity Credit Score.

OFAC score and flag values are derived from information maintained by the Office of Foreign Assets Control, a division of the U.S. Department of Treasury. Social Security Pre-Randomization and Deceased values are derived from information maintained by the Social Security Administration.

The latest information on how to read your Clarity consumer file disclosure can be found at:

https://consumersupport.clarityservices.com/how_to_read_report

The latest information on how to read your Clarity Credit Score can be found at:

https://consumersupport.clarityservices.com/how_to_read_score

Disclaimer: This consumer report may contain personally identifiable information, and may be used only in accordance with all regulatory guidelines.
© 2009 - 2003 Clarity Services Inc. All Rights Reserved.

# EXHIBIT B
## Mr. Perry's Clarity Statement, February 11, 2023
### Balance Credit Loan Tradeline - Excerpt



Account #18

Consumer

| | |
|---|---|
| Name: PERRY, RUPERT | Date of Birth: ████ |
| Address: ████ PALM COAST FL 32137 | |
| Bank Routing Number: | Bank Account Number: |
| Phone Number: ████ | |

Current

| | | | |
|---|---|---|---|
| Account #: XXXXXXXXXXXXXXXXXXXXXXXXX████ | | Company: | CCBank/TLS/SunUp |
| Account Type: Unsecured | | Credit Limit: | $0 |
| Ownership: Individual | | Current Loan Amount: | $1,104 |
| Number of Payments: 18 | | Current Balance: | $0 |
| Payment Frequency: Semimonthly Only | | Past Due: | $0 |
| Open Date: 5/5/2021 | | Actual Payment: | $104 |
| First Due Date: | | Next Payment Amount: | $0 |
| Last Update Date: 6/15/2022 | | Status: | Closed/Paid |
| Delinquency Date: | | Closed Date: | 6/15/2022 |
| Payment History: ●----------------- | | Closed Status: | |
| Comment: | | | |
| Consumer Dispute: | | | |

Historical

| | | | |
|---|---|---|---|
| Original Account Type: Unsecured | | Original Loan Amount: | $1,104 |
| First Payment Date: 6/15/2022 | | First On-Time Payment Date: | |
| Last Payment Date: 6/15/2022 | | Last On-Time Payment Date: | |
| Total Late Payments: 0 | | Collections (#): | 0 |
| Amount of Late Payments: $0 | | Total Collections: | $0 |
| Total Days Late: 0 | | Days In Collections: | 0 |
| Longest Late Payment: 0 | | Last Collection Date: | |
| Charged Off Date: | | Worst Payment Status: | |
| Charge Off Amount: | | First Closed Date: | 6/15/2022 |

Page **24** of **24**

2023 CC 000222

## IN THE CIRCUIT/COUNTY COURT OF FLORIDA, SEVENTH JUDICIAL CIRCUIT, IN AND FOR FLAGLER COUNTY, FLORIDA

### CASE MANAGEMENT ORDER

**IMPORTANT- This Order contains important deadlines that must be complied with or sanctions may result.**

This Case Management Order is issued in accordance with Administrative Orders of the Florida Supreme Court and Seventh Judicial Circuit Court.

### A.    CASE DESIGNATION

Civil cases in which trials by jury are demanded are designated as "General". All other civil cases are designated as "Streamlined". Cases subsequently designated as "Complex" pursuant to Rule 1.201, Fla. R. Civ. P., are exempted from the requirements of this Order and will follow the procedures outlined in the Rule.

### B.    PROJECTED TRIAL DATE

For "General" cases the *projected* docket sounding and trial dates will be eighteen (18) months from case filing, or twelve (12) months from the date of this Order, whichever date is later. For "Streamlined" cases, the *projected* docket sounding and trial dates will be twelve (12) months from case filing, or six (6) months from the date of this Order, whichever date is later. The parties are expected to be ready to try this case by this deadline.

### C.    SERVICE OF PROCESS

Plaintiff(s) are required to serve each defendant with initial process no later than 120 days from case filing or sixty (60) days from the date this Order is issued, whichever date is later. Motions for extension of time to complete service of process must be filed no later than ten (10) days prior to expiration of the initial time period for service. In its discretion, the presiding judge may grant plaintiff(s) an additional ninety (90) days to serve any remaining defendant(s). After the expiration of the time for service, including any extensions, any unserved defendant(s) will be dropped from the action, or the case will be dismissed without prejudice, as appropriate.

### D.    ADDING NEW PARTIES

The deadline for adding new parties to an action is ninety (90) days after the completion of service of process on the initial defendants or sixty (60) days from the date this Order is issued, whichever date is later.

### E.    OBJECTIONS TO PLEADINGS

Objections to pleadings must be filed no later than twenty (20) days from the date the pleading is served upon the objecting party. Any objection not timely scheduled for hearing may be deemed waived or abandoned.

### F.    COMPLETION OF DISCOVERY

All discovery is to be completed according to the following schedule:

| Action or Event | General | Streamlined |
|---|---|---|
| Disclosure of expert witnesses | 75 days before docket sounding for parties seeking affirmative relief; 60 days before docket sounding for parties not seeking affirmative relief | 75 days before docket sounding for parties seeking affirmative relief; 60 days before docket sounding for parties not seeking affirmative relief |
| Disclosure of fact witnesses | 60 days before docket sounding | 60 days before docket sounding |
| Service of written discovery requests | 45 days before docket sounding | 45 days before docket sounding |
| All other discovery to be completed | 10 days before docket sounding | 10 days before docket sounding |

## G.    PRETRIAL MOTIONS

All pretrial motions must be filed no later than thirty (30) days prior to the trial date. Pretrial motions filed within thirty (30) days of trial will not be considered if predicated on matters the movant knew, or should have known with the exercise of reasonable diligence, at least thirty (30) days prior to the trial date. Because of busy court calendars, hearing time may not be available to consider motions filed close to the deadline. The inability of a party to obtain hearing time will generally not constitute grounds for a continuance of the trial.

## H.    MEDIATION

Unless excused by the Court, or excluded pursuant to Rule 1.710(b), Fla. R. Civ. P., mediation is to be conducted in all cases. Mediation must be concluded and a report filed prior to docket sounding.

## I.    SERVICE OF THIS ORDER

- For cases filed on or before April 30, 2021, plaintiff is required to serve a copy of this Order on all other parties and file a notice of service with the Clerk within 30 days of the date of its issuance.
- For cases filed after April 30, 2021, plaintiff is required to serve a copy of this Order on all other parties together with service of process, or in the manner prescribed in Fla. R. Civ. P. 1.080.

## J.    EXTENSIONS AND CONTINUANCES

The Court hereby adopts a firm continuance policy in this matter and will only extend deadlines set forth in this Order upon a showing of good cause.

## K.    SANCTIONS

Failure to comply with the terms of this Order may result in sanctions against the offending party.